**FILED UNDER SEAL**

FILED
2010 AUG 26 P 4:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

UNITED STATES ex rel

CODY M. CHILDRESS,

BRINGING THIS ACTION ON BEHALF
OF THE UNITED STATES
OF AMERICA

C/O JOYCE WHITE VANCE
U.S. Attorney
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203

and

C/O Eric Holder
Attorney General of the United States
Department of Justice
10th & Constitution Aves. N.E.
Washington, D.C. 20530

    Plaintiffs and Relators,

vs.

SOUTHERNCARE, INC.
2204 Lakeshore Dr., Suite 475
Birmingham, AL 35209

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CV-10-AR-2328-S

Date Received: _____

Complaint **Filed**
**IN CAMERA**
**SEALED**, Pursuant to 31 U.S.C.
§ 3730(b)

_____
United States District Court
Judge

**COMPLAINT**
**AND JURY DEMAND**

## COMPLAINT

This is an action by *qui tam* Relator Cody M. Childress in the name of the United States Government to recover damages and civil penalties arising from the false claims and statements made by SouthernCare, Inc. Defendant

SouthernCare, has unlawfully and illegally submitted false Medicare claims for payment to the United States Government for reimbursement.

## PARTIES

1. Relators Cody M. Childress is a citizen of the United States of America. Relator is bringing this civil action for violations of 31 U.S.C. § 3729 et seq. for himself and for the United States Government pursuant to the *qui tam* provisions of the False Claims Act 31 U.S.C. § 3730 (b) (1). Relator is a former employee of SouthernCare Inc., in the State of Mississippi. Relator has knowledge of the false claims submitted by Defendant to the Federal Government and is an original source of the information contained in these allegations.

2. Defendant Southern Care, Inc is a Delaware corporation with its principal place of business in Birmingham, Alabama on Lakeshore Drive. Service of process may be had upon Defendant, SouthernCare, Inc., by serving LexisNexis Document Solutions, Inc., 150 S. Perry St., Montgomery, AL 36104.

## JURISDICTION AND VENUE

3. This action arises under 31 U.S.C. § 3729 *et seq.*, commonly known as the False Claims Act.

4. Jurisdiction over this action is conferred on this Court by 31 U.S.C. § 3732 (a) and 28 U.S.C. § 1331, because this civil action arises under the laws of the United States and the Defendant can be found in Alabama and transacts business in Alabama

5. Venue is proper in the Northern District of Alabama under 28 U.S.C.

§1391 (b) and (c) and 31 U.S.C. 3732 (a) because Defendant can be found and operates and transacts business in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

6. SouthernCare is a Medical Services Provider that provides Hospice Care in fifteen States throughout the United States. The States where SouthernCare provides hospice care services are as follows: Alabama, Georgia, Indiana, Iowa, Kansas, Louisiana, Michigan, Mississippi, Missouri, Ohio, Pennsylvania, South Carolina, Virginia Texas and Wisconsin. SouthernCare, Inc. is a Delaware Corporation with its headquarters in Alabama at 2204 Lakeshore Drive, Suite 475, Birmingham, Alabama 35209. SouthCare also has locations in Alabama in Alex City, Bessemer, Clanton, Cullman, Daphne, Demopolis, Dothan, Gadsden, Greenville, Grove Hill, Huntsville, Montgomery, Quad Cities, and Tuscaloosa. In Mississippi, SouthernCare has offices in Batesville, Biloxi, Brookhaven, Hattiesburg, Jackson, Lucedale, Meridian, Newton, Tupelo and Yazoo City. Relator worked out of the Jackson, Mississippi office of SouthernCare, but has a good faith belief that most of the schemes set forth herein were pervasive throughout the organization. SouthernCare can be served with process by delivering the summons and complaint to its registered agent for service of process LexisNexis Document Solutions, Inc. 150 S. Perry St. Montgomery, AL 36104.

7. In 2009, SouthernCare settled a False Claims Act case brought against it for improperly enrolling patients into hospice care who did not meet admission criteria. The settlement included a Corporate Integrity Agreement with HHS-OIG

that was entered into in January 2009. As part of the agreement, SouthernCare expressly agreed to comply with all Federal health care laws and program requirements. SourthernCare also agreed to report any "matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized." Further, SouthernCare posted its code of conduct on its website, clearly making the below violations and claims submissions "knowing" submissions of False Claims. The allegations herein are new and distinct from the prior False Claims Act action and have occurred subsequent to the settlement of the aforementioned False Claims Act action.

**The Federal Programs Involved**

8.     The allegations herein involve the Medicare program. Medicare pays thousands of dollars up-front for each hospice patient admitted to hospice care.

## The Fraudulent Conduct and False Claims.

### A. Improper Admissions to Hospice Care after the CIA.

9.     Through Relator's work as a Community Relations Specialist and Community Relations Director for SouthernCare he discovered that SouthernCare continues to admit patients in hospice care that do not meet the criteria for hospice care. Defendant SouthernCare continues admitting ineligible patients through the following means:

10.    Requiring patient quotas for SouthernCare hospice marketing personnel. Relator Childress personally had patient quotas placed on him. His quotas varied from 6-8 non-duplicated Medicare patients per month. Quotas increased

as marketer compensation increased. Quotas were required throughout the SouthernCare company even after the implementation of the CIA in knowing violation of the CIA, the Code of Conduct and the False Claims Act.

11. SouthernCare alters patient diagnosis in medical records in order to have the patient meet criteria for hospice. One of the ways altered medical records was by SouthernCare admission nurses asking referral sources (through the marketing representatives) to add diagnosis to the patient medical records. Zach in Dr. Parvesh Goel's office (offices in Canton and Flowood, Mississippi) did this on a regular basis. Zach would add the diagnosis and forge Dr. Goel's signature. Zach was also the recipient of kickbacks for referrals.

12. Another way in which SouthernCare achieved admissions that did not meet criteria was to get a different admissions nurse to "re-evaluate" a patient who had been properly rejected as not meeting criteria only days before. Often admissions nurse, Chiquanda Evans, would deny a patient hospice care admission because they did not meet criteria for hospice care. The non-admission would be recorded in a referral log as a non-admission. Then within days, Dallas Little (regional director) would send out a different admissions nurse to evaluate the patient and have the patient admitted.

13. Finally, SouthernCare improperly admits patients who do not meet criteria for hospice as evidenced by their early discharge. A.J and W.B. are two patients admitted through the Yazoo City office that were discharged the same week they were admitted.[1]

---

[1] Initials are used in this complaint to protect patient confidentiality. Relator knows the identities of the actual patients and has provided the actual names to the United States.

### B. Kickbacks for Referrals

14. SouthernCare also paid and pays kickbacks in violation of the Stark and Anti-Kickback laws in order to induce referrals of hospice patients to SouthernCare. Specific examples of kickbacks are as follows:

SouthernCare paid Zach – an employee in Dr. Parvesh Goel's office - cash for referrals of hospice patients. Zach was not the physician. However, he signed the doctor's name and made referrals in exchange for cash payments. Zach was visited by several SouthernCare CRS and CRD people as it was known he would make referrals for payments. Dr. Parvesh Goel has office locations at 1171 Hart Street in Canton, Mississippi 39046 and 544 Keyway Drive in Flowood, Mississippi 39232.

15. Naomi in Dr. Don Gibson's in Richland, Mississippi office also referred hospice patients in exchange for Wal-mart gift cards. These cards were provided by SouthernCare sales representatives. Dr. Gibson's office is located at 811 Highway 49 S, Richland Mississippi 39218.

16. Regional Director, Dallas Little knew about the payments for referrals and these payments for referrals are knowing violations of the False Claims Act. In addition, while Miranda Welch was still working for In His Hands Hospice, Dallas Little hired her. She was working out her two week notice with in His Hands Hospice and Dallas Little offered to pay her $150 per referral to redirect hospice patients to SouthernCare. Miranda did redirect the patients. Dallas paid her for the referrals, but paid less than the $150 per patient he promised. The list of patients is as follows:

17. Patient S.B., SouthernCare # 309067, admitted 6/12/2009, falsely billed to Medicare the day of admission or within a few days after, diagnosis CVA.

18. Patient A. F., SouthernCare # 309071, admitted 6/19/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis CAD.

19. Patient J. A., SouthernCare # 51049, admitted 6/19/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis CHF.

20. Patient C. P., SouthernCare # 309077, admitted 6/30/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis General Debility.

21. Patient L. H., SouthernCare # 309089, admitted 7/24/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis CA Colon.

22. Patient N.C., SouthernCare # 52052, admitted 7/31/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis ASCVD.

23. Patient M.J., SouthernCare # 309096, admitted 8/12/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis Failure to Thrive.

24. Patient E.F., SouthernCare # 309099, admitted, 8/17/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis CAD.

25. Patient M.S., SouthernCare #309102, admitted 8/20/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis Cervical Caw/Mets.

26. Patient B.S., SouthernCare # 309117, admitted 9/30/2009, falsely billed to Medicare on the day of admission or within a few days after, diagnosis CAD. Medicare paid all of the claims submitted as set forth in paragraphs 17-26.

### C. Billing for Services not Provided as Required by Hospice Guidelines

27. SouthernCare also knowingly failed to visit patients as required by Medicare laws, rules and regulations and billed as though they visited the patients. SouthernCare nurses failed to visit patients as often as required by Medicare Guidelines and knowingly certified that visits had been made that in fact had not been made. A list of patient initials that were not visited as required, and yet billed to Medicare as if they were visited, is as follows (the actual names have been provided to the United States): E.S., C.H., V.M., M.A., S.O., T.H., R.F., A.J., G.P., A.C.

28. As to each of the above factual allegations, Defendant SouthernCare, Inc. acted with actual knowledge of this information, in deliberate ignorance of the truth or falsity of this information and/or in reckless disregard of the truth or falsity of this information. Defendants knowingly violated the False Claims Act as that term is defined in 31 U.S.C. § 3729(b)(1).

29. The conduct alleged was conducted at the direction, or with the involvement of, SouthernCare's corporate offices, including Regional Manager, Dallas Little.

**Retaliation in Violation of the False Claims Act Whistleblower Protection Provisions**

30. While employed at SouthernCare, Relator told his superior Dallas Little that he was going to report the false and fraudulent conduct of SouthernCare to the Government. As a result of the lawful acts done by the Relator Childress in attempting to stop and/or report one or more false claims by SouthernCare, Relator Childress has been threatened, harassed and discriminated against in his employment in violation of 31 U.S.C. § 3730(h). SouthernCare has sued Relator Childress and tried to force him to sign releases and other documents that would prohibit him from filing this action, or from disclosing information to the Government.

**CAUSES OF ACTION**
**COUNT ONE:**
**VIOLATION OF 31 U.S.C. § 3729(a)(1)**

31. Relator hereby incorporates and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. From February 2009 to the present, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States for Hospice Care patients falsely billed pursuant to the schemes set forth above.

33. From February 2009 to the present, Defendant knowingly made, used or caused to be made or used, false records or statements material to false or fraudulent claims to the United States for Hospice Care patients billed pursuant to the schemes set forth above.

34. From February 2009 to the present, Defendant knowingly made used, or

caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to transmit money or property to the Government, pursuant to the schemes set forth above.

35. The United States has been damaged as a result of Defendants violations of the False Claims Act in an amount to be proven at trial, including without limitation those sums received by Defendant in payment of false claims by Medicare.

## COUNT TWO:
## FALSE CLAIMS AND BILLINGS INCIDENT TO ANTI-KICKBACK/ STARK ACT VIOLATIONS

36.  Relators hereby incorporate and re-allege Paragraphs 1-35 as if fully set forth herein.

37.  From February 2009 through the present, Defendant routinely violated the Anti-Kickback/Stark laws, 42 U.S.C. § 1395nn(a)(1), (h)(6) and 42 U.S.C. § 1320a-7b(b), by providing illegal incentives to physicians and other medical providers to obtain referrals of patients and to perpetuate its scheme to charge for unnecessary services.

38. Defendant's violation of these laws rendered them statutorily ineligible to receive payment for services rendered patients obtained through its illegal scheme, under both the express terms of 42 U.S.C. § 1395nn, 42 U.S.C. § 1320a-7b(b) and by operation of Medicare/Medicaid laws and regulations.

39. The United States conditions payment on Defendant's compliance with the Anti-Kickback/Stark laws, 42 U.S.C. §§ 1395nn(a)(1), (h)(6) and 1320a-7b(b).

40. Defendant's submission of claims for payment for services rendered Medicare and Medicaid patients while it was knowingly violating the Anti-Kickback/Stark laws and statutorily ineligible to receive payment violates the False Claims Act, 31 U.S.C. § 3729(a).

41. In order to receive payment for all of its Medicare hospice patients, Defendant was required to certify that it was in compliance will all Medicare laws and regulations including the Anti-Kickback/Stark laws. When Defendant made such certifications, it knew it was in violation of Anti-Kickback/Stark laws and statutorily ineligible to receive payment.

42. Accordingly, Defendant, by and through its agents, officers and employees, knowingly presented and caused to be presented false claims for payment or approval for services rendered patients while in knowing violation of the Anti-Kickback/Stark laws in violation of 31 U.S.C. § 3729(a)(1)(A).

43. Defendant, by and through its agents, officers and employees, knowingly made, used or caused to be used false records or statements material to false claims – specifically that Defendants were in compliance with all Medicare law and regulations, including the Anti-Kickback and Stark laws while being in knowing violation of those laws. Thus, Defendant violated 31 U.S.C. § 3729 (a)(1)(B).

44. Defendant has been, and is currently aware, of its violations of the Anti-Kickback and Stark laws and knows of its obligations to refund monies to the United States that it obtained while statutorily ineligible to receive payment. Thus, Defendant violated 31 U.S.C. § 3729(a)(1)(G) by making, using or causing

to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or has knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government.

45.  The United States has been damaged as a result of Defendant's violations of the False Claim Act in an amount to be proven at trial, which includes without limitation all sums received by Defendant in payment for false claims while statutorily ineligible to receive payment.

## COUNT THREE:
## RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT
## WHISTLEBLOWER PROTECTION LAWS

46.  Relator hereby incorporates and re-alleges Paragraphs 1-45 as if fully set forth herein.

47.  While employed at SouthernCare, Relator told his superior Dallas Little that he was going to report the false and fraudulent conduct of SouthernCare to the Government. As a result of the lawful acts done by the Relator Childress in attempting to stop and/or report one or more false claims by SouthernCare, Relator Childress was threatened, harassed and discriminated against in his employment in violation of 31 U.S.C. § 3730(h). SouthernCare sued Relator Childress and tried to force him to sign releases and other documents that would prohibit him from filing this action or from disclosing information to the Government.

48.  As a result of Defendants threats harassment and discrimination, Relator has been damaged and has incurred attorneys' fees and costs. Relator is

entitled to all damages set forth in 31 U.S.C. § 3730 (h)(2) including attorneys' fees and costs and other special damages.

## JURY TRIAL DEMANDED

49.     Relator demands a jury trial.

## PRAYER

**WHEREFORE**, Relator prays for judgment:

(a)     Ordering Defendant to pay the United States Government three times its actual damages resulting from each of the false claims presented or caused to be presented plus interest; and to Relator his attorney's fees and costs;

(b)     Ordering Defendant to pay the United States Government a civil penalty of $11,000 as required by law to be assessed against Defendant for each of the false claims presented or caused to be presented or for each false record made or used material to a false or fraudulent claim;

(c)     Awarding Relator an amount the Court decides is reasonable for collecting the civil penalty and damages by pursuing this matter, which award, by statute, shall not be less than 15% nor more than 25% of the proceeds of this action or the settlement of any such claim if the Government intervenes in the action, and not less than 25% nor more than 30% if the Government declines to intervene in the action.

(d)     Ordering Defendant to pay Relator's counsel reasonable attorneys' fees and expenses.

(e)     Ordering Defendants to pay Relator compensation for any special damages sustained as a result of the harassment, threats and discrimination, including litigation costs and reasonable attorneys' fees as a result of Defendants' wrongful harassment of Relator Childress.

(f)     Granting such other relief as the Court may deem just and proper.

*/s/ Scott A. Powell*

Scott A. Powell
Don McKenna
Hare, Wynn, Newell & Newton
2025 3Rd Ave. N., Suite 800
Birmingham, AL 35203
Tel: (205) 328-5330
Toll Free: 800-568-5330
Fax: (205) 324-2165
scott@hwnn.com
don@hwnn.com


Dustin Kittle
Will Beckum
Beckum Kittle, LLP
6619 Hwy. 119 S. Suite 300
Alabaster, AL 35007
Tel: (205) 358-3100
Fax: (205) 358-3033
dkittle@beckumkittle.com
wbeckum@beckumkittle.com